**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1972
_____

JAMES FREEMAN,
                                        Appellant

v.

DEPARTMENT OF CORRECTIONS; SUPERINTENDENT JOSEPH J. PIAZZA; LT.
JORDAN; LT. MOYER; OFFICER STUDLACK; OFFICER BOWERS; OFFICER
FORNWALD; OFFICER LAHR; LISA SHAY KERNS-BARR; MS. McCATHY,
MEDICAL ADMINISTRATOR; ANN M. BATDORF; KYLE CONFER
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 07-2191)
District Judge:  Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 3, 2011
Before:  JORDAN, BARRY and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 6, 2011)
_____

OPINION
_____

PER CURIAM

Pro se appellant James Freeman appeals the District Court's orders granting

1

summary judgment to the defendants and denying his cross-motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). For the reasons set forth below, we will affirm.

Freeman, a state prisoner, has sued numerous prison employees under 42 U.S.C. § 1983. Freeman alleges that the defendants (who will be treated collectively in this opinion) violated his constitutional rights by (1) denying his prison grievances, (2) finding him guilty during prison disciplinary proceedings, (3) confiscating his Uniform Commercial Code (UCC) materials, (4) retaliating against him for filing grievances, (5) destroying his property, (6) using excessive force against him, and (7) providing him inadequate medical care. The District Court granted summary judgment to the defendants, and Freeman filed a timely notice of appeal to this Court.

We agree with the District Court's analysis of Freeman's claims. As an initial matter, the Eleventh Amendment bars suits for monetary damages against state officials sued in their official capacities. See Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990). Therefore, Freeman's claims that seek money damages from the defendants in their official capacities fail as a matter of law.

The District Court was likewise correct to reject Freeman's claim concerning the prison grievance system. Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (collecting

cases). Thus, the defendants' alleged obstruction or misapplication of these procedures is not independently actionable.

We will further affirm the District Court's grant of summary judgment to the defendants on Freeman's claim that his First Amendment rights were violated by the defendants' confiscation of his UCC materials. We have previously held that the Department of Corrections' policy permitting confiscation of these types of materials is not constitutionally unreasonable because it advances an interest in preventing prisoners from filing fraudulent liens. Monroe v. Beard, 536 F.3d 198, 207-10 (3d Cir. 2008). Freeman has failed to distinguish our holding in Monroe on a legal or factual basis; accordingly, Monroe is dispositive of Freeman's First Amendment claim.

We also agree with the District Court's resolution of Freeman's claim that the defendants involved in his two disciplinary actions violated his right to procedural due process. The protections of the Due Process Clause are triggered only if there is a deprivation of a protected interest in life, liberty, or property. See Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003). "For a prisoner, such a deprivation occurs when the prison imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (internal quotation marks omitted). Freeman claimed that, as a result of the disciplinary proceedings, he was sanctioned to a total of 360 days of disciplinary custody. This alleged punishment does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life, and Freeman's

3

claim therefore fails.  See Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997).

We will similarly affirm the District Court's order as to Freeman's retaliation claim.  Freeman contends that, in retaliation for his filing a grievance against a prison guard, that guard searched his cell, confiscated his UCC materials, and placed him in the restrictive housing unit.  To establish a claim of retaliation under the First Amendment, Freeman must show that (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001).  If Freeman makes this initial showing, the defendants "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Id. at 334.  Here, Freeman admitted to violating prison rules by possessing UCC materials.  Therefore, even assuming that Freeman made out a prima facie case, there is no genuine issue of material fact that the prison guard's conduct was reasonably related to legitimate penological interests and that Freeman would have been disciplined for his offense notwithstanding his grievance.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).  Accordingly, as the District Court held, the defendants were entitled to summary judgment on this claim.

We will also affirm the District Court's order granting judgment to the defendants on Freeman's claim that the defendants violated his due process rights by confiscating and destroying his property. Deprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). An adequate remedy was available here: Freeman could have filed a state tort action, see id. at 535.

We will also affirm the District Court's disposition of Freeman's excessive-force claim. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8 (1992). When reviewing Eighth Amendment excessive-force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. In making this determination, we examine the factors outlined by the Supreme Court in Whitley v. Albers, 475 U.S. 312, 321 (1986), including (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Here, Freeman alleged that two prison guards, after locking him in his cell and removing his handcuffs, yanked on his arm, twisted his finger, and closed a wicket door several times on his arm. However, as the District Court emphasized, Freeman played a key role in the scuffle with the guards. He admitted that he tried to throw the first guard off track, which prompted the guards to apply force against him and attempt to re-cuff his hands. Eventually, by tussling with the guards, Freeman was able to gain possession of the handcuffs. Inmates are not permitted to possess handcuffs because they can be used as a weapon, and accordingly, the guards then took further action to reclaim the handcuffs. Thus, it was reasonable for the defendants to use force to retrieve the handcuffs and to subdue Freeman, and they properly discontinued their use of force once they had accomplished these goals. Further, Freeman sustained only minor injuries — some abrasions on his arms — in the incident. While the absence of serious injury is not dispositive, it does indicate that the force the guards used was itself limited. See Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). In these circumstances, therefore, we conclude that the force the defendants used was reasonable as a matter of law.

Finally, we conclude that the District Court did not err in granting summary judgment to the defendants on Freeman's claim that the defendants provided him inadequate medical care after he was injured in the above-described altercation with the guards. To make out an Eighth Amendment claim, Freeman must establish that the defendants acted with deliberate indifference; that is, that they "kn[ew] of and

6

disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The undisputed evidence shows that medical personnel visited and examined Freeman soon after he was injured and advised him to keep his abrasions clean, and that a nurse later followed up, took x-rays of Freeman's hand, and prescribed a cream. While Freeman believes that this care was insufficient, we have recognized that courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[,] which remains a question of sound professional judgment." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal alterations, quotation marks omitted)). Therefore, as the District Court held, the defendants were also entitled to judgment on this claim.

Accordingly, we will affirm the District Court's orders.[1]

---

[1] For the reasons discussed in this opinion, we conclude that the District Court also correctly denied Freeman's cross-motion for summary judgment.